# In the United States Court of Federal Claims

Case No. 08-595C
FOR PUBLICATION
Filed: March 11, 2010

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                                  \*
MICHELE TAYLOR, ADMINISTRATRIX  \*
OF THE ESTATE OF JOSEPH E. KEANE, \*    Federal Employees' Compensation
                                                  \*    Act, 5 U.S.C. §§ 8101, 8105, 8107,
           *Plaintiff*,                           \*    8146a, 8128; Jurisdiction; Transfer to
                                                  \*    District Court
v.                                                \*
                                                  \*
THE UNITED STATES,                \*
                                                  \*
           *Defendant*.                           \*
                                                  \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Robert E. Keane* and *Lauren M. Keane*, Medford, Massachusetts, for Plaintiff.

*Patryk J. Drescher*, Trial Attorney, with whom were *Michael F. Hertz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director and *Todd M. Hughes*, Deputy Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**SMITH**, Senior Judge:

Plaintiff Michele Taylor is the administratrix of the estate of Mr. Joseph E. Keane. She filed a claim in this Court seeking: (1) judicial review of the benefits awarded to Mr. Keane under the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101-8152 (2006); and (2) an order by the Court to the Secretary of Labor (Secretary) for unpaid FECA benefits to be paid to the estate of Mr. Keane. The Government responded with a Motion to Dismiss pursuant to RCFC 12(b)(1), seeking dismissal of Plaintiff's claim for lack of subject matter jurisdiction. After careful review and consideration, the Court concludes that jurisdiction is lacking and hereby **TRANSFERS** this case to the United States District Court for the District of Massachusetts.

## I. BACKGROUND

The decedent, Joseph E. Keane, suffered a spinal and neck injury while on an annual training cruise as a student at the Massachusetts Maritime Academy in 1962. The injury to Mr. Keane's back and neck rendered him a quadriplegic. (Compl. at 1.) From the time of his injury

until he died in February 2005, Mr. Keane received total disability compensation through the Office of Workers' Compensation Programs (OWCP) of the Department of Labor, pursuant to FECA. *Id.*

### A. Disability Payments Under FECA

Under FECA, employees suffering from total disability are entitled to two-thirds of what their compensation would have been, but for their injury. 5 U.S.C. § 8105(a). FECA also mandates that if an employee was serving in a learner's capacity at the time of the injury, the Secretary shall recompute the compensation rate of the employee to reflect any probable increase in the individual's wage-earning capacity, but for the injury. 5 U.S.C. § 8113(a).

At the time of his injury, Mr. Keane was serving as a cadet, entitled to a $50 monthly allowance. On August 12, 1962, but for his injury, he would have completed his training as a third assistant engineer, and would have been entitled to a salary of $600 per month. (Def.'s Mot. to Dismiss at 6.) The records indicate, and Plaintiff does not contest, that Mr. Keane received monthly total disability compensation based on the respective rates of $50 and $600 per month from February 18, 1962 until his death on February 5, 2005. (Def.'s Mot. to Dismiss at 2, Attach. B at 1.) During that time, OWCP annually adjusted Mr. Keane's monthly income to satisfy mandatory cost of living adjustments pursuant to 5 U.S.C. § 8146a.

### B. Plaintiff's Claims for Unpaid FECA Benefits

FECA mandates that, upon the death of an employee receiving certain types of FECA compensation, any unpaid awards must be distributed to the employee's beneficiaries. *See* 5 U.S.C. § 8109. In this case, Ms. Taylor submitted a claim to the Department of Labor for unpaid FECA benefits on November 17, 2005, alleging that Mr. Keane's FECA awards were improperly calculated. (Compl. at 1, 4.) Ms. Taylor contends that OWCP did not acknowledge or respond to her claim for unpaid compensation, nor did it respond to her subsequent inquiries into the status of the claim. *Id.* at 4. Plaintiff therefore claims that the Department of Labor denied her and Mr. Keane due process of law. *Id.* at 2, 4. In reality, OWCP denied Plaintiff's November 17, 2005 claim, but sent the denial letter to the wrong address. This suit was initiated on August 21, 2008. *Id.* at 1.

After Plaintiff filed suit, OWCP reopened the case and issued a second denial letter on December 18, 2008, which was sent to Ms. Taylor's attorney. (Def.'s Resp. Ex. A at 1-2.) Nevertheless, Ms. Taylor alleges that Mr. Keane's FECA benefits were not properly awarded because OWCP failed to award: (1) mandatory compensation increases based upon Mr. Keane's potential earning capacity under 5 U.S.C. § 8113; (2) mandatory schedule awards for Mr. Keane's loss of use of specific members of his body under 5 U.S.C. § 8107; and (3) cost of living adjustments to reflect Mr. Keane's potential wage-earning capacity under 5 U.S.C. § 8146a. (Compl. at 7.)

## II. STANDARD OF REVIEW

The United States Court of Federal Claims derives its subject matter jurisdiction from the Tucker Act. *See* 28 U.S.C. § 1491(a)(1) (2006). Moreover, the Court will grant a motion to dismiss when the plaintiff fails to establish that the Court has subject matter jurisdiction by a preponderance of the evidence. *See Leonardo v. United States*, 55 Fed. Cl. 344, 346 (2003).

## III. DISCUSSION

The Plaintiff must overcome two jurisdictional hurdles before she may seek relief in this Court. First, she must satisfy the jurisdictional requirements of the Tucker Act; and second, she must secure an exception to FECA's statutory bar to judicial review pursuant to the *Kyne* doctrine. Because the Court holds, however, that it does not have jurisdiction under the Tucker Act, and that the Plaintiff may have a meritorious claim if brought in the proper forum, the Court will transfer this case to the proper Federal District Court.

### A. Jurisdiction is Lacking Because the Statute is Not Money-Mandating

The Tucker Act grants this Court jurisdiction over claims against the United States that mandate the payment of money to a plaintiff pursuant to a constitutional provision, statute, Executive Order, or regulation. *United States v. Testan*, 424 U.S. 392, 397-402 (1976). However, the Tucker Act does not create a substantive right of recovery. Instead, any party alleging a non-contractual claim must "look beyond" the Tucker Act for a money-mandating provision based in law. *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

Here, the Plaintiff contends that her claim for unpaid FECA benefits constitutes a money-mandating claim falling within the jurisdictional limits of this Court. (Compl. at 2, 3.) A statute that merely *involves* monetary compensation, however, is not necessarily "money-mandating." Indeed, Plaintiff does not seek a judicial award of money, but an equitable order compelling the Secretary to award Plaintiff unpaid compensation, which is not within this Court's jurisdiction. *Id.* at 9. Therefore, these claims are not money-mandating and the Court must dismiss Plaintiff's claims for failing to satisfy the Tucker Act's jurisdictional requirements. However, a Federal District Court may be the proper forum for Ms. Taylor's to bring her claims and the Court is inclined to transfer this case accordingly.

### B. Analysis of Whether Case Should be Transferred or Dismissed

In deciding whether a case, in which this Court has no jurisdiction should be transferred or dismissed, the Court must make a general assessment of whether the case has a potentially valid claim. This does not only require the Court to look at jurisdiction but also at the merits of the case. If the District Court has jurisdiction it would still be a waste of judicial resources to transfer

a case that could not succeed on the merits.  The inquiry should be phrased in two questions.  First, is it possible that there is jurisdiction in the District Court? As long as it is possible the first criteria has been met.  Second, does the claim have any chance of receiving a remedy in the District Court?  If it does, the second criteria is met and the case should be transferred.  The Court believes these two questions resolve the problems often referred to as "in the interest of justice" and "the efficient administration of justice."  The Court herein performs a cursory review of the case for such purpose.  The Court notes that Ms. Taylor must clear a significant jurisdictional hurdle in the District Court. The Secretary has exclusive jurisdiction over the payment of FECA benefits.  *See* 5 U.S.C. §§ 8124, 8128.  Under FECA, the Secretary's decision to grant or deny payment of employee benefits are "(1) final and conclusive for all purposes and with regard to questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."  5 U.S.C. § 8128(b).

The Supreme Court has enforced this strict bar to judicial review of the Secretary's decisions under FECA.  *See Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991) ("FECA contains an 'unambiguous comprehensive' provision barring any judicial review of the Secretary['s] determination of FECA coverage."  (quoting *Lindhal v. Office of Pers. Mgmt.*, 470 U.S. 768, 780 (1985)).  The bar to judicial review was similarly interpreted by the Federal Circuit when the court affirmed the dismissal of a plaintiff's claim seeking reclassification of her FECA award as disability compensation.  *Pueschel v. United States*, 297 F.3d 1371, 1373, 1377 (Fed. Cir. 2002).

Despite this precedent, some jurisdictions have recognized two exceptions to the bar of judicial review, pursuant to the line of Supreme Court decisions known as the *Kyne* doctrine.  *See Leedom v. Kyne*, 358 U.S. 184, 189 (1958) (holding that judicial review is appropriate in the event of a blatant statutory violation Railway Labor Board); *see also Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233, 237 (1968) (noting that boards cannot become "lawless" agencies, and that courts must be able to enforce a statutory mandate).  For example, in *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278 (9th Cir. 1988), the Ninth Circuit concluded that judicial review of the Secretary's decisions is appropriate in cases involving: (1) alleged constitutional violations; and (2) clear violations of statutory mandates.  *Id.* at 281.  However, while many jurisdictions recognize the exception for constitutional violations, some jurisdictions have rejected the exception for  blatant statutory violations.  *See, e.g.*, *McDougal-Saddler v. Herman*, 184 F.3d 207, 212-14 (3rd Cir. 1999).

Here, the alleged constitutional violation at issue is the denial of due process, while the alleged statutory violation is the Secretary's failure to properly apply certain sections of FECA.  *See* 5 U.S.C. §§ 8113, 8107, 8109, 8146a.  However, the *Kyne* doctrine does not permit judicial review of the Secretary's interpretation and application of FECA statutes.  *See Paluca v. Sec'y of Labor*, 813 F.2d 524, 528 (1st Cir. 1987).  Instead, the courts may only conduct a "cursory review of the merits" to determine whether the Secretary has violated a statutory mandate, as interpreted by the Secretary.  *Hanauer v. Reich,* 82 F.3d 1304, 1311 (4th Cir. 1996).

*1. Statutory Mandate of § 8113: Wage-Earning Capacity Adjustments*

Section 8113 mandates that if an individual was employed in a learner's capacity at the time of the injury, the Secretary shall "recompute prospectively the monetary compensation payable for disability . . . corresponding to the probable increased wage-earning capacity" of the individual, but for the injury.  5 U.S.C. § 8113(a).

Here, Plaintiff acknowledges that OWCP reviewed and recomputed Mr. Keane's wage-earning capacity on August 12, 1962 from $50 to $600 per month, to reflect his probable completion of the training program that he was enrolled in at the time of his injury. (Compl. at 5.)  However, the Plaintiff claims that the failure of OWCP to render any additional adjustments in Mr. Keane's wage-earning capacity over the next forty-three years amounted to a clear violation of a statutory mandate.  *Id.*  The Government counters that the Secretary found that § 8113(a) only contemplates one increase in compensation to reflect a trainee's probable completion of the training program at the time of the injury, (Def.'s Reply at 11-12),  and that the statute does not envision promotions, raises, or other events that fall within the realm of possibility, but outside the sphere of probability, see *Hayden C. Ross*, 55 E.C.A.B. 455 (2004).

*2. Statutory Mandate of § 8107: Eligibility for Schedule Awards*

Deciphering the mandate of § 8107 requires this Court to delve into the legislative history of the statute.  At the most basic level, § 8107 requires that OWCP provide compensation pursuant to a schedule of awards to employees who lost, or lost the use of, various appendages or bodily functions.

*i. Compensation for Partial Loss of Use: Statutory History*

Prior to 1966, FECA did not permit schedule awards for any employee who suffered from: (1) partial impairment of a listed member; or (2) had a significant impairment of a portion of the body not covered by the schedule provisions.  Such an employee was only entitled to compensation for the loss of wage-earning capacity.  *See Walter J. Wallace*, 21 E.C.A.B. 6 (1969); S. Rep. No. 89-1285, at 3 (1966); H.R. Rep. No. 89-1304 at 3 (1966).

The Government argues that the pre-1966 FECA did not permit schedule awards for any employee who suffered from: (1) any kind of impairment – total or partial – of a listed member; or (2) had a significant impairment of a portion of the body not covered by the schedule provisions.  (Def.'s Mot. To Dismiss at 7.)  However, the Government's analysis fails to take notice of the difference between the benefits afforded to employees suffering from partial impairment, as compared to the total impairment of a member listed in the schedule.

*ii. Compensation for Total Loss of Use: Statutory History*

Under the pre-1966 FECA statute, employees suffering from total impairment of a scheduled appendage could receive a schedule award regardless of their other physical impairments, as summarized in the legislative history of the 1966 FECA amendments.  *See* S. Rep. No. 1285, at 3 (1966); H. Rep. No. 1304, at 3 (1966).  That statute provided an exemption for employees that suffered "the *total* and permanent loss, or loss of use of [an appendage listed in the schedule], whether or not the disability also involve[d] other impairments of the body" and granted those employees the schedule awards listed in the previous subsection.  *See* 5 U.S.C. § 755(a)-(b) (1964) (current version at 5 U.S.C. § 8107(a)-(b) (2006)).  Therefore, persons suffering from total impairment of a listed member would have been eligible for the schedule award *and* compensation for loss of wage-earning capacity, regardless of their other injuries, as noted in the legislative histories.

*iii. The Procedural Bar of § 8109: No Posthumous Claims for Schedule Awards*

As a procedural matter, the Government also argues that FECA does not permit the payment of schedule awards to an employee's beneficiaries unless a valid claim for an award is filed during an employee's lifetime.  (Def.'s Reply at 10, Ex. A at 2.)  Indeed, § 8109(a)(2) requires employees to "file[] a valid claim during their lifetime" in order for their beneficiaries to receive any residual schedule awards under § 8107(a) upon the employee's death.  In other words, even assuming that Mr. Keane is legally entitled to schedule awards, the Plaintiff is not entitled to those unpaid awards as his beneficiary unless Mr. Keane submitted a claim for schedule awards during his lifetime.  In response, Plaintiff contends that § 8109(a) only applies where the employee dies from a cause other than his injuries, and that Mr. Keane died as a result of his original injury.  (Pl.'s Opp. at 6 (citing 5 U.S.C. § 8109(a)(3))).

*3. Statutory Violation of § 8146a: Cost of Living Adjustment*

Finally, § 8146a mandates that the Secretary must increase disability compensation to reflect changes in the price index annually.  *See* 5 U.S.C. § 8146a.  Plaintiff contends that Mr. Keane's cost of living adjustments were "based solely upon his basic compensation and did not take into account" the schedule awards or increase in earning capacity. (Compl. at 7.)  In other words, Plaintiff does not dispute that OWCP properly applied cost of living adjustments pursuant to § 8146a, but rather that OWCP miscalculated the basic compensation rate under § 8107 and § 8113.

## V. CONCLUSION

In considering the briefs and argument is this case, the Court notes that Plaintiff has a very uphill battle to recover on its claim.  However, in the Court's view, under the factors listed in this opinion *infra*, the Court cannot say that Plaintiff has no chance of recovery.  It is for the District Court, like every court in the first instance, to decide its own jurisdiction. This case is not frivolous.  It not be a waste of judicial resources to transfer it to the District Court.

For the reasons set forth above, Plaintiff's claims seeking an order to compel the Secretary of Labor to award FECA benefits are beyond this Court's jurisdiction.  It is also clear to the Court that Plaintiff has a possibility of relief in the District Court or, put more correctly, the Court can find no absolute legal bar to their claim which would make transfer wasteful of judicial resources.  Therefore, the Court hereby directs the Clerk to **TRANSFER** this case to the United States District Court for the District of Massachusetts.

**It is so ORDERED.**

 s/Loren A. Smith
LOREN A. SMITH,
SENIOR JUDGE